**13**

1   HAGOP T. BEDOYAN, CSB NO. 131285
2   JACOB L. EATON, CSB NO. 244834
   CHRISTIAN D. JINKERSON, CSB NO. 232143
3   KALEB L. JUDY, CSB NO. 266909
   KLEIN, DENATALE, GOLDNER,
4    COOPER, ROSENLIEB & KIMBALL, LLP
   5260 N. Palm Avenue, Suite 201
5   Fresno, California 93704
   Telephone: (559) 438-4374
6   Facsimile: (559) 432-1847
7   Email: hbedoyan@kleinlaw.com; jeaton@kleinlaw.com

8   Proposed Attorneys for Debtors-in-Possession

9

10          **UNITED STATES BANKRUPTCY COURT**

     **EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION**

11

| | |
|---|---|
| 12 In re: | Lead Case No. 12-17310-A-11 (Proposed) |
| 13 JOHN VISSER and GRACE VISSER | |
| 14     Debtors-In-Possession. | Chapter 11<br>DC No.: KDG-14 |
| 15 | (Proposed to be) jointly administered with: |
| 16 | |
| 17 In re: | Case No. 12-17311-A-11 |
| 18 JOHN VISSER DAIRY, INC., | DC No.: KDG-14 |
|     Debtor-In-Possession. | |
| 19 | |
| 20 In re: | Case No. 12-17312-A-11 |
| 21 VISSER RANCH TRANSPORT, INC., | DC No.: KDG-14 |
| 22     Debtor-In-Possession. | |
| 23 In re: | Case No. 12-17313-A-11 |
| 24 DAIRYMAN'S CALF RANCH, INC., | DC No.: KDG-14 |
| 25     Debtor-In-Possession. | |
| 26 In re: | Case No. 12-17314-A-11 |
| 27 LARIAT DAIRY, INC., | DC No.: KDG-14 |
| 28     Debtor-In-Possession. | |

| In re: | Case No. 12-17315-A-11 |
|---|---|
| GRACELAND DAIRY, INC., | DC No.: KDG-14 |
| Debtor-In-Possession. | |
| In re: | Case No. 12-17316-A-11 |
| VISSER RANCH, INC., | DC No.: KDG-14 |
| Debtor-In-Possession. | |
| In re: | Case No. 12-17336-A-11 |
| VISSER FARMS, | DC No.: KDG-14 |
| Debtor-In-Possession. | |

■ Affects all Debtors

□ Affects John Visser and Grace Visser only

□ Affects John Visser Dairy, Inc., only

□ Affects  Visser Ranch Transport, Inc., only

□ Affects Dairyman's Calf Ranch, Inc., only

□ Affects Lariat Dairy, Inc., only

□ Affects Graceland Dairy, Inc., only

□ Affects Visser Ranch, Inc., only

□ Affects Visser Farms, only

Date:  October 3, 2012

Time:  1:30 p.m.

Place:  United States Bankruptcy
2500 Tulare Street, 5th Floor
Department A, Courtroom 11
Fresno, California

Judge: Honorable Fredrick E. Clement

**MOTION BY DEBTORS FOR ORDER AUTHORIZING
DEBTORS' EMPLOYMENT OF
GLASSRATNER ADVISORY & CAPITAL GROUP, LLC**

TO THE HONORABLE FREDRICK E. CLEMENT, UNITED STATES BANKRUPTCY

JUDGE:

John and Grace Visser ("the Vissers"), and John Visser Dairy, Inc., Graceland Dairy,

Inc., Visser Ranch, Inc., Visser Ranch Transport, Inc., Lariat Dairy, Inc., Dairyman's Calf

Ranch, Inc., and Visser Farms (collectively "the Visser Entities," the Vissers and the Visser

Entities are referred to as "Debtors") move the Bankruptcy Court for an Order Authorizing Debtors' Employment of Glass Ratner as their financial advisors and debt restructuring specialists and represent as follows:

## I.    Introduction

1.    Debtors are related farming entities.  They seek to employ the financial advisory firm of GlassRatner Advisory & Capital Group, LLC ("GlassRatner"), 19800 MacArthur Blvd., Irvine, California, as their financial advisors and management consultants.

## II.    Jurisdiction

2.    This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue of the Debtor's Chapter 11 case and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

3.    The basis for the relief requested in this Motion is 11 U.S.C. § 327.

## III.    Background of Debtor and events leading up to filing Chapter 11

4.    John and Grace Visser are individuals residing in Visalia, California.  The Vissers commenced their Chapter 11 case by filing a Voluntary Petition under Chapter 11 of the Bankruptcy Code on August 24, 2012.  The Vissers are the settlors, trustees, and beneficiaries of the "John and Grace Visser Revocable Family Trust" ("the Vissers' Trust").  The Trust owns 100 percent of the outstanding shares of the Visser Entities (except for Visser Farms) including John Visser Dairy, Inc., Graceland Dairy, Inc., Visser Ranch, Inc., Visser Ranch Transport, Inc., Lariat Dairy, Inc., and Dairyman's Calf Ranch, Inc.  John and Grace Visser are the sole partners of Visser Farms.  The Trust also owns the real property on which the Visser Entities operate.

5.    John Visser Dairy, Inc., is a California corporation (taxed under subchapter "S") formed in late 2005.  It operates in Hanford, California, as a dairy with a milking herd of about 3,600 cows and total livestock of about 7,000 animals.  John Visser Dairy uses 28 persons employed by a farm labor contractor, Cream of the Crop, and owns its dairy herd and operating equipment.  John Visser Dairy leases the facility on which it operates from the Vissers' Trust.  John Visser Dairy filed a Voluntary Petition under Chapter 11 on August 24, 2012.

6.      Graceland Dairy, Inc., is a California corporation (taxed under subchapter "S") formed in late 2007. It operates in Tulare, California, as a dairy with a milking herd of about 3,000 cows and total livestock of about 6,000 animals. Graceland Dairy uses 26 persons employed by Cream of the Crop and owns its dairy herd and operating equipment. Graceland Dairy leases the facility on which it operates from the Vissers' Trust. It filed a Voluntary Petition under Chapter 11 on August 24, 2012.

7.      Visser Ranch, Inc., is a California corporation (taxed under subchapter "S") formed in late 2005. It operates in Strathmore, California, as a calf ranch raising heifers and steers for, among others, John Visser Dairy and Graceland Dairy. Visser Ranch employs 20 persons directly and uses 36 persons employed by Cream of the Crop and owns about 6,000 head of livestock and operating equipment. Visser Ranch leases the facility on which it operates from the Vissers' Trust. It filed a Voluntary Petition under Chapter 11 on August 24, 2012.

8.      Visser Ranch Transport, Inc., is a California corporation (taxed under subchapter "S") formed in 1991. It operates in Tulare, California, as a trucking company hauling livestock, milk, and feed for the other Visser Entities. Visser Ranch Transport uses 7 persons employed by Cream of the Crop and owns its own trucks and equipment. It filed a Voluntary Petition under Chapter 11 on August 24, 2012.

9.      Lariat Dairy, Inc., is a Texas corporation (taxed under subchapter "S") formed in late 2005. It operates in Muleshoe, Texas, as a dairy with a milking herd of about 6,800 cows and total livestock of about 12,000 animals. Lariat employs 56 persons directly and owns its dairy herd and operating equipment. Lariat Dairy leases the facility on which it operates from the Vissers' Trust. Lariat Dairy filed a Voluntary Petition under Chapter 11 on August 24, 2012 in the Eastern District of California.

10.      Dairyman's Calf Ranch, Inc., is a Texas corporation (taxed under subchapter "S") formed in late 2005. It operates in Muleshoe, Texas, as a calf ranch raising heifers and steers for, among others, Lariat Dairy. Dairyman's Calf Ranch employs 19 persons directly and owns about 3,200 head of livestock and operating equipment. Dairyman's Calf Ranch

leases the facility on which it operates from the Vissers' Trust.  Dairyman's Calf Ranch filed a Voluntary Petition under Chapter 11 on August 24, 2012 in the Eastern District of California.

11.     Visser Farms is a California general partnership formed in 2006.  It operates in Strathmore, California growing almonds and cherries and share-cropping walnuts.  It operates in Texas growing wheat.  Visser Farms owns its operating equipment.  Visser Farms leases the farmland from the Vissers' Trust.  Visser Farms filed a Voluntary Petition under Chapter 11 on August 26, 2012.

12.     All of the Visser Entities are headquartered in Strathmore, California.  John Visser and his son-in-law Brian Schaap oversee the operations of all of the Visser Entities.  Diana Timms is the controller for all of the Visser Entities.

**A. The Vissers and the Visser Entities have significant debts owed to each other**

13.     The Visser Entities share management, employees, and equipment.  They use combined financial statements.  They buy and sell significant amounts of goods and services to each other.

14.     The Vissers and the Visser Entities maintain "Zero Balance" bank accounts, whereby cash moves freely between their accounts (on a daily basis) in order to lower the amount of cash they need to borrow from institutional lenders.  This results in complex and ever-changing intercompany receivables, as reflected below.

15.     The Vissers, through their Trust, owe significant amounts of money to Visser Ranch Transportation, Lariat Dairy, Dairyman's Calf Ranch, and Visser Farms.

16.     John Visser Dairy owes significant amounts of money to Visser Ranch, the Vissers' Trust, Lariat Dairy, and Graceland Dairy.

17.     Graceland Dairy owes significant amounts of money to Visser Ranch and the Vissers' Trust.

18.     Visser Ranch owes significant amounts of money to the Vissers' Trust, John Visser Dairy, Lariat Dairy, Dairyman's Calf Ranch, and Visser Farms.

19.     Visser Ranch Transportation owes significant amounts of money to Visser Ranch and John Visser Dairy.

20. Lariat Dairy owes significant amounts of money to Visser Ranch, Visser Ranch Transportation, the Vissers' Trust, John Visser Dairy, Graceland Dairy, and Dairyman's Calf Ranch.

21. Dairyman's Calf Ranch owes significant amounts of money to Visser Ranch, the Vissers' Trust, and John Visser Dairy.

22. Visser Farms owes a significant amount of money to the Vissers' Trust.

23. Additionally, the Visser Entities all operate on real property owned by the Vissers' Trust, and all pay rent to the Trust.

**B. The Vissers and the Visser Entities have common major creditors**

24. The Vissers' Trust and several of the Visser Entities, including John Visser Dairy, Graceland Dairy, and Visser Ranch, are borrowers on a $32.7 million secured promissory note in favor of Farm Credit West, FCLA ("Farm Credit West Note"). The Farm Credit West Note is secured by a first deed of trust against the real property owned by the Vissers' Trust.

25. The Vissers and the Visser Entities are all borrowers on Wells Fargo Bank loans of approximately $64.5 million. The Wells Fargo loans are secured by substantially all of the Vissers' and the Visser Entities' assets, including second and third deeds of trust against the real property (as well as first deeds of trust against certain real property).

26. Debtors' businesses are dairy industry businesses. The dairy industry has been struggling through the downturn in the national and world economy. Debtors fell behind in their payments to Wells Fargo Bank. Debtors loans owed to Wells Fargo Bank became all due and payable. However, Debtors were not able to refinance the debt owed to Wells Fargo Bank when in came due because of the depressed real estate and dairy real estate. Debtors and Wells Fargo Bank came to a one-year forbearance agreement that expired in December 2011. Debtor and Wells Fargo Bank were unable to agree on the terms of continuing financing by Wells Fargo Bank.

27. In July 2012, Wells Fargo Bank sent demand letters to the creameries and sales yards with whom Debtors do business demanding that the bank be paid moneys owed to Debtors. The creameries and sales yards complied with the demand letters depriving Debtors

1  of the money necessary to operate their businesses.  Therefore, Debtors were prompted to file

2  their Chapter 11 cases and attempt to reorganize under the protection of the Bankruptcy Code.

3  **IV.     Debtors seek joint employment of Glass Ratner**

4       28.    Debtors wish to employ GlassRatner, 19800 MacArthur Blvd., Irvine,

5  California, as their financial advisors during the bankruptcy proceedings herein.

6       29.    Debtors selected GlassRatner to act as their financial advisors for the following

7  reasons:

8              a.     GlassRatner is experienced and qualified to perform the consulting

9                     services required by Debtors and their Chapter 11 estates: a copy of

10                    Managing Director George Demos' Curriculum Vitae is attached as

11                    Exhibit "B" to the supporting Exhibits;

12             b.     GlassRatner is familiar with the nature and complexities involved in the

13                    operation of the business conducted by Debtors; and

14             c.     Debtors believe that Glass Ratner is qualified to act as their financial

15                    advisors.

16      30.    The professional services that GlassRatner is to render include: (a) assisting

17  with the assessment, formulation or implementation of financial restructuring, (b) reviewing,

18  evaluating, and participating in various negotiations with creditors, (c) preparing the Real

19  Property Questionnaire, and (d) otherwise assisting in such matters as will aid in

20  accomplishing the foregoing.  The services to be rendered by GlassRatner are more fully

21  described in the engagement letters dated August 22, 2012, and August 27, 2012 attached as

22  Exhibit "A" to the *Exhibits in Support of Motion by Debtors for Order Authorizing Debtors'*

23  *Employment of GlassRatner Advisory & Capital Group, LLC.*  GlassRatner has been

24  performing all financial advisory services required by Debtors in these proceedings since

25  Debtors filed their Voluntary Petitions.

26  ///

27  ///

28  ///

**A. Disclosure of adverse interests and connections**

     i. <u>Interests</u>

31.    GlassRatner has no interest or represents no interest adverse to Debtors or their estates in any of the matters upon which it will be engaged and Debtors believe that the employment of GlassRatner will be in the best interest of their estate.

     ii. <u>Connections</u>

32.    GlassRatner has a connection with Debtors from its prior employment by Debtors and its current employment with Debtors on the terms described below. GlassRatner's employment by Debtors is disclosed in Exhibit "A" attached to the concurrently-filed *Declaration of George Demos in Support of Motion by Debtors for Order Authorizing Debtors' Employment of GlassRatner Advisory & Capital Group, LLC.* GlassRatner has reviewed its connections with Debtors, and believes that all connections with Debtors have been disclosed. Additionally, GlassRatner does not believe that this connection would interfere with its financial advisory duties to Debtors and their estate.

33.    GlassRatner has no connections with Debtors' creditors, any other party in interest, or their attorneys and accountants, the United States Trustee, or any person employed in the Office of the United States Trustee except as described in Exhibit "A" attached to the concurrently filed *Declaration of George Demos.*

34.    GlassRatner will not represent Debtors in their Chapter 11 case if the Bankruptcy Court determines that a conflict of interest exists which disqualifies Glass Ratner from employment by Debtors. GlassRatner will withdraw as the financial advisors for Debtors if an actual conflict of interest arises during the administration of Debtors' Chapter 11 cases.

**V. Points and Authorities: the court should approve the employment of Glass Ratner.**

35.    The employment of professionals by a debtor-in-possession in a Chapter 11 case is governed by 11 USC Sections 327(a) and (c) which provide:

> (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that <u>do not hold or represent an interest</u>

adverse to the estate, and that are <u>disinterested persons</u>, to represent or assist the trustee in carrying out the trustee's duties under this title.

. . . . . .

(c) In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section <u>solely</u>  because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment <u>if there is an actual conflict of interest</u>.

11 U.S.C. Sections 327(a) and (c), emphasis added.

## A. GlassRatner does not hold an interest adverse to the estate

36.     As set forth in the concurrently-filed *Declaration of George Demos*, GlassRatner does not hold an interest adverse to Debtors or their estates in any of the matters upon which it is to be engaged.  Under *In re AFI Holding, Inc.*, 530 F.3d 832 (9th Cir., 2008), an "adverse interest" is (1) possession or assertion of an economic interest that would tend to lessen the value of the estate; (2) possession or assertion of an economic interest that would create either an actual or potential dispute in which the estate is a rival claimant; or (3) possession of a predisposition under circumstances that create a bias against the estate.  530 F.3d at 845.

37.     GlassRatner does not assert an economic interest against the estate that would lessen the value of the estate to creditors.  It does not possess or assert an economic interest to which the estate is a rival claimant.  It does not have a predisposition against the estate that would lessen its vigorous representation of the estate.  Thus, GlassRatner does not *hold* an interest adverse to the estates.

38.     GlassRatner, or its employees, have not served as an examiner in these cases.

## B. GlassRatner does not represent an interest adverse to the estates

39.     Neither does GlassRatner represent an interest adverse to the estates.  The potential adverse interest would be the intercompany receivables owed between and among the Vissers and various Visser Entities ("the Debt").  Although certain Visser Entities are creditors of other Visser Entities, those interests do not lessen the value of their respective estates

because all of the Debtors contemplate filing Plans of Reorganization that will provide for maximum repayment of all allowed claims. Additionally, the Debt, to the extent it is not just "paper" debt, is undisputed and liquidated. For those reasons, GlassRatner will not need to be employed by any of the Debtors regarding the Debt. Finally, Debtors have unity of interest and the goal of paying all creditors in full. This necessarily means that GlassRatner is not employed by a party with a bias against any of the estates. Because repayment of the debt owed to both Wells Fargo and Farm Credit West is cross-collateralized, the eight debtors are best served by all of them succeeding. For those reasons, GlassRatner's employment by each of the Debtors does not constitute *representing* an interest adverse to either estate.

**C. GlassRatner is disinterested**

40.    The term "disinterested person" is defined as a person who:

> (A) is not a creditor, an equity security holder, or an insider;
>
> (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and
>
> (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. §101(14).

41.    No facts indicate that GlassRatner falls within (14)(A) or (B). Subsection (C) requires an analysis similar to the analysis of *In re AFI Holding, Inc., supra.* There, the Court examined whether the firm would be adverse to the estate, debtor, or creditors by virtue of some relationship with or connection to the debtor. GlassRatner does not believe that there are any facts present indicating that GlassRatner has an interest materially adverse to the estates. For those reasons, GlassRatner is a disinterested person as defined by Section 101(14).

**D. GlassRatner has no actual conflict of interest**

42.    11 U.S.C. Section 327(c) provides:

> (c) In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another

creditor or the United States trustee, in which case the court shall disapprove such employment <u>if there is an actual conflict of interest</u>.

43.    GlassRatner believes that the facts show that it does not have an actual conflict of interest.  An actual conflict of interest would require employment—regarding the Debt—by the related debtors.  Because no employment regarding the Debt is contemplated, there is, at most, a *potential* conflict.  The Code is clear that only an actual conflict of interest will disqualify a person from employment by related debtors.

**E. Employment by debtors in related cases is not prohibited, and the court should appropriately consider the time and cost efficiencies resulting from joint employment.**

44.    *Collier on Bankruptcy* urges a cautious approach to disqualification in multi-debtor cases.  Collier notes that the risks presented by joint representation increase when factors not present here are encountered: (a) the debtors have separate creditors, (b) the debtors have different officers, (c) the debtors have separate directors (d) the debtors have separate ownership interests and (e) there are significant intercompany claims. 3 Collier on Bankruptcy, ¶ 327.04[5](15th ed. Rev. 2007).  Collier notes that it is more reasoned for courts to examine the factual circumstances surrounding the representation to determine whether it is appropriate. *See* ¶ 327.04[5] [a].

45.    Citing *BH & P, Inc.*, 949 F.2d 1300, 1310 (3rd Cir. 1991), Collier advocates a flexible case-by-case approach governing conflict of interests applicable to professionals in jointly administered bankruptcy cases involving interdebtor claims.  The court is required to analyze the specific facts of the case to determine whether efficiency and economy [which may favor multiple representation] must yield to competing concerns affecting fairness to all parties involved and protection of integrity of the bankruptcy process.  Factors to be considered include, but are not limited to, the nature of the disclosure of conflicts made at the time of appointment, whether the interests of related estates are parallel or conflicting, and the nature of the interdebtor claims made.  Collier, *supra* at ¶ 327.04[5] [a]; 949 F.2d at 1316, 17.

///

///

46.    The *BH & P* court wrote:

> As we have said, denomination of a conflict as "potential" or "actual" and the decision concerning whether to disqualify a professional based upon that determination in situations not yet rising to the level of an actual conflict are matters committed to the bankruptcy court's sound exercise of discretion. In order to ensure proper review in these cases, those factors underlying the exercise of discretion "must be factually substantiated upon the evidentiary record." *Id.*

47.    Applying the *BH & P* factors demonstrates that employment of GlassRatner by each of the Debtors is appropriate. Full disclosure has been made to all parties in interest in all eight estates. Debtors' interests are certainly parallel. Debtors' ownership and management are common.

48.    As noted, the only potential conflict regards the Debt. That debt is liquidated and undisputed. No services regarding the Debt are required. Repayment of the debts owed to Wells Fargo and Farm Credit West by Debtors is cross-collateralized. Thus, there is unity of interest and a parallel path for the related Debtors. That path is best taken with GlassRatner as financial advisors for all eight debtors.

49.    Debtors believe that GlassRatner should not be disqualified from representing Debtors unless an actual conflict of interest arises. GlassRatner will withdraw as the financial advisors for Debtors if an actual conflict of interest arises during the administration of Debtors' Chapter 11 case. Additionally, the Court will retain jurisdiction over GlassRatner's employment by Debtors at all times during the administration of the Chapter 11 cases to determine if an actual conflict of interest exists or has arisen. See *In re Westwood Shake & Shingle*, 971 F.2d 387, 390 (9th Cir. 1992) and *In re Plaza Hotel*, 111 B.R. 882, 891(Bankr. E.D.Cal. 1990).

**VI.    Miscellaneous matters related to compensation of Glass Ratner**

50.    Compensation paid to GlassRatner will be based on their normal and usual hourly billing rates as described below. Any compensation paid to GlassRatner from property of the estate will only be paid after application and approval by the Court.

51.    The normal and usual hourly billing rates charged by GlassRatner are:

|  |  |
|---|---|
| • Kerry Krisher | $450.00 per hour |
| • George Demos | $225.00 per hour |
| • Michael Shenk | $225.00 per hour |
| • Other Consultants | $175.00–$350.00 per hour |

52.    Debtors paid pre-petition retainers to GlassRatner in the total amount of $65,000.00.

53.    Before Debtors' petition date, GlassRatner applied $21,330.00 to fees and costs incurred pre-petition, leaving a balance on the Vissers' petition date of $43,670.00. The retainers will be used to pay fees and costs incurred by GlassRatner in connection with its representation of Debtors after application and approval by the Bankruptcy Court. GlassRatner claims a lien against the retainers which is perfected by possession under California law. GlassRatner asks the Court to approve monthly payment procedures.

**VII.    Conclusion**

54.    Debtors request that they be authorized to employ GlassRatner as their financial advisors to render services in the areas described above with compensation to be paid as administrative expenses in such amounts as the Court may determine and allow.

WHEREFORE, Debtors pray that the Court make and enter its order as follows:

1.    The *Motion by Debtors for Order Authorizing Debtors' Employment of GlassRatner Advisory & Capital Group, LLC* be granted;

2.    The employment of Glass Ratner be approved, retroactive to the Petition Dates, and,

3.    For such other relief as the court deems just and proper.

Date: September 12, 2012

KLEIN, DeNATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP

By _____

Hagop T. Bedoyan
Jacob L. Eaton
Christian D. Jinkerson,
Kaleb L. Judy,
Attorneys for Debtors-in-Possession